**\*E-FILED 7/24/06\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HERAEUS INCORPORATED,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SOLAR APPLIED MATERIAL TECHNOLOGY CORP.,<br><br>　　　　Defendant._____/ | NO. C 06-01191 RMW (RS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL PRODUCTION FROM ORYX ADVANCED MATERIALS** |

INTRODUCTION

Plaintiff Heraeus Incorporated and defendant Solar Applied Material Technology manufacture and sell competing "sputtering targets" used in the production of thin-film magnetic storage media. Heraeus alleges that Solar's sputtering targets infringe certain patents held by Heraeus. By this motion, Heraeus seeks to enforce a subpoena it served on a third party, Oryx Advanced Materials, that also sells competing sputtering targets. Heraeus contends that it needs information from Oryx to determine whether Oryx's sputter targets also infringe the patents, and that such information is relevant both to its damages claims and to potential issues regarding patent validity. Oryx contends that there is no justification for permitting Heraeus to use the subpoena process in this action to explore whether it may have infringement claims against other competitors, and that the subpoena is otherwise overbroad and burdensome.

The motion was fully briefed and heard on July 19, 2005. Based on the argument of counsel and all the papers filed to date, the motion will be granted with respect to the sales documents

1 Heraeus seeks but otherwise will be denied.

## BACKGROUND

Sputtering targets are used in the production of, among other things, hard drive memory devices. Sputtering targets are not available on the open market, but are typically sold directly by the manufacturer to the customers who use them. The targets often contain precious or semi-precious metals that are not fully consumed when the targets are used. Therefore, when a target's useful life is expended, it usually is returned to the manufacturer for a recycling credit. There appears to be no dispute that it is problematic for one manufacturer of sputtering targets to obtain samples of a competitor's targets.

The patents in suit relate to certain microstructure characteristics of sputtering targets. Heraeus contends that any target within a certain range of chemical compositions is *likely* to have a microstructure that infringes the claims of these patents, but that physical examination of the particular target is necessary to determine whether it in fact falls within the claim limitations.

The subpoena in dispute originally sought production of a relatively broad range of information, as well as exemplars of sputtering targets made by Oryx within a defined range of chemical compositions. During meet and confer negotiations, and in the course of its briefing on this motion, Heraeus has substantially narrowed what it seeks to obtain. At this point, Heraeus requests only that Oryx be compelled to provide, (1) summary documentation sufficient to show Oryx's sales volume of sputtering targets within the identified chemical composition range (with customer identity information redacted), and (2) exemplars of two such targets. Heraeus has also proposed numerous additional measures designed to protect the confidentiality and security of all materials produced.

## DISCUSSION

Oryx's opposition brief glosses over the efforts made by Heraeus to narrow the scope of its subpoena and instead primarily focuses on why it contends the subpoena should not be enforced as initially drafted. As such, it leaves the record somewhat unclear as to how onerous a burden it

2

would be for Oryx to provide what Heraeus is now requesting. Nevertheless, the heart of Oryx's opposition is its contention that it simply is not proper for Heraeus to use the subpoena process in this action to "fish" for possible infringement claims it may have against other competitors in the industry.  Although Heraeus strongly denies any improper motive, it fully acknowledges that the purpose of obtaining exemplars of Oryx targets is to determine whether they are infringing (or, non-infringing substitutes).

Heraeus insists that the information it would derive from examining Oryx targets would be relevant to its existing claims in this action both with respect to potential damage theories and with respect to Solar's apparent intent to pursue an invalidity contention based on obviousness under 35 U.S.C. § 103.  At least at this early stage in the litigation, however, the potential relevance on which Heraeus relies is too speculative, ill-defined, and tangential to support discovery of critical competitive information of this nature from a non-party competitor.

Under somewhat different circumstances, the Federal Circuit has expressly cautioned against allowing the type of discovery Heraeus is seeking here:

> Micro Motion asserted entitlement to discovery of information concerning each competitor's business simply because it may seek to prove lost profit damages.  If this position were correct, a patentee could, in virtually every infringement suit, immediately obtain discovery from all possible competitors by merely filing a complaint asking for damages against one.  And, of course, the alleged infringer in such case would have the same right.  While we do not suggest that discovery is being used in this case simply to harass a competitor, the possibility for such abuse of discovery is readily apparent.

*Micro Motion Incorporated v. Kane Steel Co. Inc.*, 894 F.2d 1318, 1324-1325 (Fed.Cir. 1990).

Heraeus is correct that its subpoena here, as limited, is substantially narrower than the subpoenas in dispute in *Micro Motion*.  That distinction, however, does nothing to undercut the applicability of *Micro Motion's* overarching caution against discovery of this nature supported only by nebulous contentions that it might become relevant to potential damages theories.  See generally 894 F.2d at 1322-1324.

Heraeus's theory, like that of the patent holder in *Micro Motion*, is that its potential right to "lost profit" damages turns in part on whether acceptable non-infringing substitute products are available in the marketplace. See Heraeus Opening Brief at pp. 5-6; *Micro Motion* 894 F. 2d at

3

1322. As the *Micro Motion* court pointed out, recovery of lost profits presents challenges to a plaintiff in a situation where there are multiple competitors in the market because it becomes more difficult to prove that "*but for* the infringement, it would have made the infringer's sales." *Id.* In such circumstances, patentees generally must show that any alternative source of supply "is an infringer or puts out a noninfringing product that is an unacceptable alternative, or has insignificant sales." *Id.*

Heraeus asserts that its lost damages theory is more crystalized than that of the patentee in *Micro Motion*. On the present record, however, that does not appear to be so. As in *Micro Motion*, it appears that Heraeus seeks information to determine which, if any, of the particular approaches to the causation problem may be available to it. Furthermore, at this point, there is little before the Court to indicate how the nature of the market or the properties of the claimed invention might bear on the viability of any of the approaches to damages–information remains to be developed on issues such as the total number of competitors, relative market shares, and the likelihood that "acceptable alternatives" exist. If, for example, there are dozens of competitors in the market, it would seem likely that Heraeus's chances of ever proving causation would be substantially less than if there are only three players, and that the concerns raised by the *Micro Motion* court in that instance would be even more magnified. Although Heraeus conceivably might eventually be able to show that this case presents a situation where the potential relevance of the information is less speculative than in *Micro Motion*, it has not done so at this point.

Heraeus contends that *Micro Motion* is further distinguishable given Heraeus's contention that the discovery it seeks may also be relevant to invalidity issues. At least at this juncture, however, it is unclear what the contentions, if any, are going to be with respect to obviousness, or how the discovery sought from Oryx could or would bear on those contentions. Thus, Heraeus has failed to show that the production of target exemplars is reasonably calculated to lead to admissible evidence. Under all these circumstances, there is an inadequate basis to require Oryx to produce exemplars of its targets to a direct competitor, regardless of the procedural protections that have

4

been proposed or that could be imposed to protect Oryx's confidentiality and security concerns.[1]

The sales volume information sought by Heraeus, as limited in the meet and confer discussions, presents a different issue. Production of such information does not implicate the same burden concern that Oryx identified regarding the direct and indirect costs it would incur by diverting its products from customers to Heraeus. Furthermore, such information is foundational to the issues discussed above as to whether there is a viable basis for Heraeus to claim lost profit damages. Although Heraeus may not be able to determine from such information whether Oryx's products are infringing or noninfringing, sales volumes may bear on the threshold question of whether Oryx's products have any relevance to the damages issues that may arise in this action.

Accordingly, the motion will be granted insofar as Heraeus seeks summary documentation sufficient to show Oryx's sales volume of sputtering targets within the identified chemical composition range, with customer identity information redacted.

## CONCLUSION

The motion is granted to the extent specified above and is otherwise denied.

IT IS SO ORDERED.

Dated: July 24, 2006

RICHARD SEEBORG
United States Magistrate Judge

---

[1] Oryx asserts that Heraeus's offer to pay the cost of any exemplars produced does not alleviate the burden that would arise if it were required to give to Heraeus targets that are already slated for delivery to particular customers. At the hearing, Heraeus offered to accept targets returned from customers as a possible alternative, so as to reduce that burden. Oryx responded that even that proposal does not wholly eliminate the burden given the scarcity of these products, and further questioned whether used targets would prove acceptable for Heraeus's testing needs. While Heraeus's proposal would, if feasible, appear to reduce significantly the burden to Oryx, it does not eliminate the other concerns raised by this type of discovery discussed above.

C 06-01191 RMW (RS)

5

1 **THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

2 David M. Beckwith    dbeckwith@mwe.com, lford@mwe.com

3 Richard F. Cauley    rcauley@jcpw.com, faiza@jcpw.com

4 Fay E. Morisseau    fmorisseau@mwe.com

5 Robert M. Vantress    rmv@svlg.com, al@svlg.com; keb@svlg.com; mwo@svlg.com

7 Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

9 **Dated: 7/24/06**                                    **Chambers of Judge Richard Seeborg**

**By:        /s/ BAK**

C 06-01191 RMW (RS)

6